# McFall v. Shimp

*John W. Murtaugh, Jr.*, for plaintiff.
*John Michael Studeny*, for defendant.

FLAHERTY, *J.*, July 26, 1978—Plaintiff, Robert McFall, suffers from a rare bone marrow disease and the prognosis for his survival is very dim, unless he receives a bone marrow transplant from a compatible donor. Finding a compatible donor is a very difficult task and limited to a selection among close relatives. After a search and certain tests, it has been determined that only defendant is suitable as a donor. Defendant refuses to submit to the necessary transplant, and before the court is a request for a preliminary injunction which seeks to compel defendant to submit to further tests, and, eventually, the bone marrow transplant.

Although a diligent search has produced no authority, plaintiff cites the ancient statute of King Edward I, 81 Westminster 2, 13 Ed. I, c. 24, pointing out, as is the case, that this court is a successor to the English courts of Chancery and derives power from this statute, almost 700 years old. The question posed by plaintiff is that, in order to save the life of one of its members by the only means available,

may society infringe upon ones absolute right to his "bodily security"?

The common law has consistently held to a rule which provides that one human being is under no legal compulsion to give aid or to take action to save another human being or to rescue. A great deal has been written regarding this rule which, on the surface, appears to be revolting in a moral sense. Introspection, however, will demonstrate that the rule is founded upon the very essence of our free society. It is noteworthy that counsel for plaintiff has cited authority which has developed in other societies in support of plaintiff's request in this instance. Our society, contrary to many others, has as its first principle, the respect for the individual, and that society and government exist to protect the individual from being invaded and hurt by another. Many societies adopt a contrary view which has the individual existing to serve the society as a whole. In preserving such a society as we have, it is bound to happen that great moral conflicts will arise and will appear harsh in a given instance. In this case, the chancellor is being asked to force one member of society to undergo a medical procedure which would provide that part of that individual's body would be removed from him and given to another so that the other could live. Morally, this decision rests with defendant, and, in the view of the court, the refusal of defendant is morally indefensible. For our law to *compel* defendant to submit to an intrusion of his body would change every concept and principle upon which our society is founded. To do so would defeat the sanctity of the individual, and would impose a rule which would know no limits, and one could not imagine where the line would be drawn.

This request is not to be compared with an action at law for damages, but rather is an action in equity before a chancellor, which, in the ultimate, if granted, would require the forceable submission to the medical procedure. For a society which respects the rights of *one* individual, to sink its teeth into the jugular vein or neck of one of its members and suck from it sustenance for *another* member, is revolting to our hard-wrought concepts of jurisprudence. Forceable extraction of living body tissue causes revulsion to the judicial mind. Such would raise the spectre of the swastika and the Inquisition, reminiscent of the horrors this portends.

This court makes no comment on the law regarding plaintiff's rights in an action at law for damages, but has no alternative but to deny the requested equitable relief. An order will be entered denying the request for a preliminary injunction.

## ORDER

And now, July 26, 1978, upon consideration of the request for a preliminary injunction, hearing thereon, arguments and briefs submitted, it is ordered, adjudged, and decreed that the request for a preliminary injunction is herewith denied.